**FILED**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2011 MAR 21 ⫼P 3: 35

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

United States *ex rel.*
OMAR BADR )
c/o Day & Johns, PLLC )
10560 Main St., #218 )
Fairfax, VA 22030 )
    Relator, )
  )
BRINGING THIS ACTION ON BEHALF )
OF THE UNITED STATES OF AMERICA )
c/o Neil H. McBride )
United States Attorney )
2100 Jamieson Ave. )
Alexandria, VA 22314 )
  )
    and )
  )
c/o Eric Holder )
Attorney General of the United States )
Department of Justice )
10th & Constitution Avenue, NW )
Washington, DC 20530 )
    Plaintiffs, )
    v. )
  )
TRIPLE CANOPY, INC )
12018 Sunrise Valley Dr., # 140 )
Reston, VA 20191 )
    Registered Agent: )
    Todd R. Eskelsen )
    233 S. Wacker Dr. )
    6600 Sears Tower )
    Chicago, IL 60606 )
    Defendants. )
  )

Case No.: 1:11cv288
GBL/JFA

~~ORIGINAL COMPLAINT~~
~~FILED *IN CAMERA*~~
~~SEALED PURSUANT TO~~
~~31 U.S.C. § 3730(b)(2)~~

Unsealed per
Order of 6/29/2012.

## INTRODUCTION

This is an action by *qui tam* Relator Omar Badr, in the name of the United States

Government, to recover penalties and damages arising from false statements or records of

Defendant Triple Canopy, Inc., regarding the training, qualification, and fitness for duty of private security personnel it provides under contract for the protection of U.S. military bases in Iraq. Upon information and belief, Relator Badr states as follows:

## JURISDICTION & VENUE

1.  This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

2.  Jurisdiction over this action is conferred upon the Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 3130 in that this action arises under the laws of the United States.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because Defendant Triple Canopy, Inc. resides and transacts business in this District.

## PARTIES

4.  Relator Omar Badr is a resident of Georgia and a United States citizen. Mr. Badr brings this civil action for violations of 31 U.S.C. § 3729(a)(1) and (2) for himself and the United States Government pursuant to 31 U.S.C. § 3730(b)(1). Mr. Badr was an employee of Defendant Triple Canopy, Inc. from approximately February 2008 to June 2010. From June 2009 until June 2010, he was employed as a medic at Al Asad Air Base in Iraq. Mr. Badr was honorably discharged from the U.S. Army in 2007 at the rank of Sergeant E-5 after six years of service with 1st Ranger Regiment, during which period he received, among other awards, a Bronze Star.

5.  Defendant Triple Canopy, Inc. ("TCI"), is an Illinois-incorporated company headquartered in Reston, Virginia providing worldwide security and risk management services including assessments, training, crisis management, protective, and

support services. Among the services it provides is military base protection for U.S. and allied forces in Iraq, pursuant to contracts with the U.S. Government.

## FACTUAL ALLEGATIONS

6.     During the period from approximately June 2009 through June 2010, Defendant TCI provided security services to the al Asad Airbase in Iraq pursuant to Joint Contracting Command-Iraq Contract Number W91GDW-07-D-4022 ("the Contract") with the U.S. Government.

7.     The Contract required Defendant TCI to provide a high level of security at internal entry control points and perimeter security operations to prevent unauthorized access to the U.S. military facilities.

8.     To that end, Defendant TCI was contractually obligated to ensure that all of the contract security personnel it deployed at Al Asad qualified with the TCI-issued weapon, an ARM-1 (an AK-47 model fitted for a 5.56 munitions). Qualification consisted of shooting at 25 meters on the Army Alternate Course Qualifications ("Alt-C"), which the Contract required be conducted annually.

9.     The Contract further obligated Defendant TCI to replace any of its personnel not able to meet the contract obligations within 21 days, at no additional cost to the U.S. Government.

10.     Minimum qualifications on a U.S. Army qualification course required males and females to score a minimum of 23 rounds out of 40 from the 25 meter line. The score card used was the Army DA-Form 3595, NOV 2002.

11.     In approximately June 2009, Defendant TCI undertook its security responsibilities at al Asad under the Contract. Approximately 18 American personnel

3

(consisting of approximately 15 Site Leads, two Managers, and one Medic) and approximately 330 Ugandan guards were employed by Defendant TCI for that purpose. Each Ugandans' file indicated that he/she had qualified on an Army rifle course with at least a minimum score of 23 approximately three weeks earlier in Kampala, Uganda before arriving in Iraq.

12.     At any given time during the June 2009 through June 2010 period, Defendant TCI had approximately 330 Ugandan guards stationed at Al Asad.  Under the Contract, the U.S. Government paid Defendant TCI approximately $1100/month per guard, as well as other amounts for the American supervisors. Hence, Defendant TCI was paid approximately $4.35 million for the Ugandan guards at Al Asad.

13.     Shortly after arriving at Al Asad in June 2009, Defendant TCI's American supervisors discovered the Ugandan guards were unable to load or unload their personal weapons, despite their files stating they had qualified three weeks earlier.  Initially, upon taking Ugandans to the range to zero their personal weapons, Defendant TCI's American managers ascertained that none of the Ugandan guards met the Army's minimum target shooting qualifications.  Indeed, the majority of the Ugandans were able to hit only paper, rather than the target on the paper.  All of Defendant TCI's American supervisors at Al Asad were aware that the Ugandan guards were not qualified to carry out the minimum security requirements under the Contract.

14.     In approximately October through November 2009, a large number of new Ugandan guards were brought to Al Asad by Defendant TCI to replace other guards who had been removed since June 2009.  These new guards, as well as senior Ugandan guards who needed to complete their annual re-qualification, were all taken to the Small Arms

4

Range ("SAR-2"). All failed to qualify. All of Defendant TCI's American Site Leads at Al Asad were aware of that fact. At the direction of a TCI supervisor, Al Asad Interim Deputy Site Manager J.O. falsely certified the Firing Scorecard Sheets for each of those Ugandans, which records were then maintained in Defendant TCI's files to fraudulently demonstrate that the guards were qualified.

15.     During December 2009 and January 2010, the attrition and replacement of Defendant TCI's Ugandan guards at Al Asad continued. On approximately January 15, 2010, Defendant TCI's Al Asad Site Manager J.C. directed Relator Badr and Acting Deputy Site Manager C.M. to compile an Excel spreadsheet setting forth the purported qualification scores of the Ugandan guards for possible inspection by the Defense Contract Management Agency ("DCMA") and internal tracking of guards who were approaching their annual re-qualification date.

16.     In May 2010, Site Manager J.C. ordered that a group of approximately 40 Ugandan guards be re-qualified prior to departing for vacation, so that if Defendant TCI's Al Asad Contract was later audited by the DCMA when it was up for renewal in June 2010, the returning guards would be qualified for duty if TCI was re-awarded the Al Asad Contract for the June 2010 to June 2011 performance period. As was the case previously, all of the Ugandans who attempted to qualify at the target range failed. Only approximately 25 of the Ugandans shot at the range; none of the approximately 300 other Ugandans fired at the range. Present at the range were almost all of Defendant TCI's American Site Leaders at Al Asad, and all of them were aware that none of the Ugandans had qualified.

5

17.    That evening, Deputy Site Manager D.B. directed Relator Badr to provide him with the new qualification sheets for all of the Ugandans. The sheets Relator Badr provided to Deputy Site Manager D.B. were blank, as none of the Ugandans had qualified, and Relator Badr informed D.B. of that reason. On approximately May 12, 2010, Relator Badr met in Herndon, Virginia with Defendant TCI Human Resources Director R.G. and Senior Legal Counsel J.P., and informed them that Defendant TCI's entire Ugandan Guard Force at Al Asad was unqualified to provide security, was in violation of Defendant TCI's contractual obligations to the U.S. Government, and that Defendant TCI's managers at Al Asad were committing fraud and ordering others to do so in order to cover up the situation.

18.    Approximately two days later, Relator Badr spoke by phone with a Defendant TCI executive named J.K., and provided the same information about the contractual violations and fraud at Al Asad as he had provided to R.G. and L.P.

19.    Upon returning to Al Asad on May 18, 2010, Relator Badr learned that Al Asad management had changed, with a new Site Manager, D.B, who had replaced J.C. Site Manager D.B. then instructed Relator Badr to fill in the data for all of the Ugandans Firing Scorecard Sheets. Site Manager D.B. instructed him to falsely indicate that the men had obtained scores in the 30-31 range, with the women obtaining scores of 24-26. Relator Badr, following their instructions, did so over the next few days. A new Site Manager, D.B.2., then signed the sheets, falsely post-dating them to indicate that the Ugandans had qualified in the following month of June.

20.    In June, Defendant TCI learned Joint Contracting Command Iraq ("JCCI") had awarded the Al Asad Contract to another private security company. Another range

6

session was conducted for the Ugandan guards, who Defendant TCI intended to transfer to other security contract sites in Iraq. Again, none qualified. Site Lead/Range Safety Officer J.R. informed Site Manager D.B.2. of that fact.

21.     The Ugandans were then demobilized, and transferred to provide security under other Defendant TCI contracts in Iraq. Approximately 30 were sent to a project known as "Cobra" ("the Cobra Contract"); approximately 25 to a project known as "Kalsue" ("the Kalsue Contract"); some to FOB Delta ("the Delta Contract"); and the majority of the remainder were sent to Basra ("the Basra Contract"). At the time Defendant TCI provided these Ugandans to fulfill security contracts with the U.S. Government, none of them were qualified to provide such services. Defendant TCI was paid by the U.S. Government under terms similar to those under the Al Asad Contract.

## COUNT I
## FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. § 3729(a)

22.     Paragraphs 1-21 are incorporated herein by reference, and all of Relator's allegations herein are the result of his direct and independent knowledge, and not derived from a publically-disclosed source.

23.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented to the United States Government, false claims for payment or approval under Government Contract W91GDW-07-D-4022 in violation of 31 U.S.C. § 3729(a)(1)(A).

24.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government false

claims for payment or approval under Government Contract W91GDW-07-D-4022 in violation of 31 U.S.C. § 3729(a)(1)(B).

25.     Defendant TCI, by and through its officers, agents, supervisors, and employees, authorized the various officers, agents, supervisors, and employees, to take the actions set forth above.

26.     Defendant TCI knowingly hid its violations of contractual requirements in the provision of security personnel under Government Contract W91GDW-07-D-4022 and falsely represented that those personnel were qualified as specified under the Government Contract requirements.  This resulted in the submission of false claims for payment to the Government by Defendant TCI.

27.     The United States has been damaged as a result of Defendant TCI's violations of the False Claims Act because it has received a service inferior to that which it specified and for which it paid.

28.     As set forth in the proceeding paragraphs, Defendant TCI has knowingly violated 31 U.S.C. § 3729(a)(1)(A) and (B), and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

WHEREFORE, Relator Badr demands compensatory and multiple damages, costs, attorney fees, and such other legal and equitable relief as the Court may provide.

## COUNT II
## FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. § 3729(a)

29.     Paragraphs 1-21 are incorporated herein by reference, and all of Relator's allegations herein are the result of his direct and independent knowledge, and not derived from a publically-disclosed source.

30.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented to the United States Government, false claims for payment or approval under the Cobra Contract in violation of 31 U.S.C. § 3729(a)(1)(A).

31.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government false claims for payment or approval under the Cobra Contract in violation of 31 U.S.C. § 3729(a)(1)(B).

32.     Defendant TCI, by and through its officers, agents, supervisors, and employees, authorized the various officers, agents, supervisors, and employees, to take the actions set forth above.

33.     Defendant TCI knowingly hid its violations of contractual requirements in the provision of security personnel under the Cobra Contract and falsely represented that those personnel were qualified as specified under the Government Contract requirements. This resulted in the submission of false claims for payment to the Government by Defendant TCI.

34.    The United States has been damaged as a result of Defendant TCI's violations of the False Claims Act because it has received a service inferior to that which it specified and for which it paid.

35.    As set forth in the proceeding paragraphs, Defendant TCI has knowingly violated 31 U.S.C. § 3729(a)(1)(A) and (B), and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

WHEREFORE, Relator Badr demands compensatory and multiple damages, costs, attorney fees, and such other legal and equitable relief as the Court may provide.

**COUNT III**
**FALSE CLAIMS ACT VIOLATIONS**
**31 U.S.C. § 3729(a)**

36.    Paragraphs 1-21 are incorporated herein by reference, and all of Relator's allegations herein are the result of his direct and independent knowledge, and not derived from a publically-disclosed source.

37.    Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented to the United States Government, false claims for payment or approval under the Kalsue Contract in violation of 31 U.S.C. § 3729(a)(1)(A).

38.    Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government false claims for payment or approval under the Kalsue Contract in violation of 31 U.S.C. § 3729(a)(1)(B).

10

39.    Defendant TCI, by and through its officers, agents, supervisors, and employees, authorized the various officers, agents, supervisors, and employees, to take the actions set forth above.

40.    Defendant TCI knowingly hid its violations of contractual requirements in the provision of security personnel under the Kalsue Contract and falsely represented that those personnel were qualified as specified under the Government Contract requirements. This resulted in the submission of false claims for payment to the Government by Defendant TCI.

41.    The United States has been damaged as a result of Defendant TCI's violations of the False Claims Act because it has received a service inferior to that which it specified and for which it paid.

42.    As set forth in the proceeding paragraphs, Defendant TCI has knowingly violated 31 U.S.C. § 3729(a)(1)(A) and (B), and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

WHEREFORE, Relator Badr demands compensatory and multiple damages, costs, attorney fees, and such other legal and equitable relief as the Court may provide.

## COUNT IV
## FALSE CLAIMS ACT VIOLATIONS
## 31 U.S.C. § 3729(a)

43.    Paragraphs 1-21 are incorporated herein by reference, and all of Relator's allegations herein are the result of his direct and independent knowledge, and not derived from a publically-disclosed source.

44.    Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented to the United States

11

Government, false claims for payment or approval under the Basra Contract in violation of 31 U.S.C. § 3729(a)(1)(A).

45.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government false claims for payment or approval under the Basra Contract in violation of 31 U.S.C. § 3729(a)(1)(B).

46.     Defendant TCI, by and through its officers, agents, supervisors, and employees, authorized the various officers, agents, supervisors, and employees, to take the actions set forth above.

47.     Defendant TCI knowingly hid its violations of contractual requirements in the provision of security personnel under the Basra Contract and falsely represented that those personnel were qualified as specified under the Government Contract requirements. This resulted in the submission of false claims for payment to the Government by Defendant TCI.

48.     The United States has been damaged as a result of Defendant TCI's violations of the False Claims Act because it has received a service inferior to that which it specified and for which it paid.

49.     As set forth in the proceeding paragraphs, Defendant TCI has knowingly violated 31 U.S.C. § 3729(a)(1)(A) and (B), and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

WHEREFORE, Relator Badr demands compensatory and multiple damages, costs, attorney fees, and such other legal and equitable relief as the Court may provide.

Relator Badr further demands a jury trial on all counts.

## COUNT V
## FALSE CLAIMS ACT VIOLATIONS
## 31 U.S.C. § 3729(a)

50.     Paragraphs 1-21 are incorporated herein by reference, and all of Relator's allegations herein are the result of his direct and independent knowledge, and not derived from a publically-disclosed source.

51.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented to the United States Government, false claims for payment or approval under the Delta Contract in violation of 31 U.S.C. § 3729(a)(1)(A).

52.     Defendant TCI, by and through its officers, agents, supervisors, and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States Government false claims for payment or approval under the Delta Contract in violation of 31 U.S.C. § 3729(a)(1)(B).

53.     Defendant TCI, by and through its officers, agents, supervisors, and employees, authorized the various officers, agents, supervisors, and employees, to take the actions set forth above.

54.     Defendant TCI knowingly hid its violations of contractual requirements in the provision of security personnel under the Delta Contract and falsely represented that those personnel were qualified as specified under the Government Contract requirements. This resulted in the submission of false claims for payment to the Government by Defendant TCI.

13

55.    The United States has been damaged as a result of Defendant TCI's violations of the False Claims Act because it has received a service inferior to that which it specified and for which it paid.

56.    As set forth in the proceeding paragraphs, Defendant TCI has knowingly violated 31 U.S.C. § 3729(a)(1)(A) and (B), and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

WHEREFORE, Relator Badr demands compensatory and multiple damages, costs, attorney fees, and such other legal and equitable relief as the Court may provide. Relator Badr further demands a jury trial on all counts.

Respectfully Submitted,

OMAR BADR
By counsel


Day & Johns, PLLC

Milton C. Johns, VSB # 42305
Christopher M. Day, VSB # 37470
Trey Mayfield, VSB #41691
Day & Johns, PLLC
10560 Main St., Ste. 218
Fairfax, Virginia 22030
Voice: (703) 268-5600
Facsimile: (703) 268-5602
*Counsel for Relator Omar Badr*

Dated: March ___, 2011

14