IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.*, OMAR BADR | ) | |
| | ) | |
| Plaintiff-Relator, | ) | |
| | ) | Case No. 1:11-cv-288 (GBL/JFA) |
| v. | ) | |
| | ) | |
| TRIPLE CANOPY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Triple Canopy Inc.'s ("TCI") Motion to Dismiss Relator Omar Badr's Complaint and Intervenor United States of America's Complaint for failure to state a claim. (Docs. 29, 31.) This case concerns allegations against a government contractor for fraudulent billing arising from the contractor's duty to provide security at United States military installations in Iraq. The instant motions present five issues before the Court.

The first issue is whether submission of an invoice listing the title of an employee whose services were billed, without reference to whether the employee met contractual conditions, constitutes a false claim under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a), if submitted knowing that the employee failed to meet a certain contractual requirement. The Court holds that the Government fails to state a claim because it failed to sufficiently plead that Defendant submitted a demand for payment containing an objectively false statement. The Government's Complaint does not sufficiently allege that the types of services provided or the amount for which it was billed were false statements. Mere failure to comply with all contractual conditions does not necessarily render the billing for those services so deficient or inadequate that the

invoice constitutes a false claim under the FCA.  Nor does it constitute an incorrect description of services provided to constitute a false statement sufficient to impose FCA liability.

The second issue is whether Relator sufficiently states an FCA claim where he alleges that (1) certain personnel were deficient in weapons training and therefore did not meet contractual requirements, (2) these personnel were transferred to other military installments, (3) the Government paid Defendant for work performed at those other installments, and (4) work at the other installments was governed by contracts "similar" to the contract governing the installment where Relator worked.  The Court holds that Relator fails to state a claim because Relator does not sufficiently allege with particularity the existence of any false claims or the submission of a false claim by Defendant.  Furthermore, Relator lacks personal knowledge as to the particular relevant provisions of the contracts governing other military bases or the events that transpired at those bases.  Accordingly, the Court grants Defendant's Motion to Dismiss Relator's Complaint.

The third issue is whether the Government sufficiently alleges a false records claim under the FCA on the basis of allegedly fabricated weapons qualification scorecards, the placement of those qualifications in personnel files, and the Government's payments to Defendant, without an allegation that the Government reviewed the weapons scorecards for the purposes of issuing payment.  The Court holds that the Government fails to sufficiently allege the existence of a false claim or the Government's reliance upon the allegedly falsified records.  A false records claim still requires the existence of a false claim, which the Government fails to sufficiently allege here.  Furthermore, the Government's allegations fail to demonstrate its reliance upon the allegedly falsified records.  The Government's broad and conclusory allegations fail to satisfy

2

Rule 9(b)'s requirement regarding fraudulent behavior. Thus, Count II of the Government's Complaint fails.

The fourth issue is whether the Government sufficiently alleges actual fraud and constructive fraud based upon the alleged scheme of falsifying weapons qualification scorecards where the Complaint lacks any specific allegations that a government official actually reviewed the records and relied upon them in authorizing payment to TCI. The Court holds that the Government fails to state a claim because it does not plead reliance upon such submissions. Both actual fraud and constructive fraud require reliance upon a misrepresentation. Counts IV and V fail because the Government fails to allege with specificity that a government official actually reviewed and relied upon the allegedly false records in certifying an invoice and authorizing payment.

The fifth issue is whether the Government may maintain an unjust enrichment claim based upon its payment of funds to TCI where TCI allegedly falsified records that would not have been paid had the Government known of the alleged falsifications. The Court holds that the unjust enrichment claim cannot stand where an express contract controls the dispute. Thus, this claim cannot stand where the Government's Complaint insufficiently challenges the validity of an existing contract.

## I. BACKGROUND and PROCEDURAL HISTORY

The United States of America, as Intervenor, brings this action against Defendant TCI for damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 ("FCA"), as well as under common law theories of breach of contract, fraud, constructive fraud, payment by mistake, and unjust enrichment. (Intervenor's Compl. ¶ 1, Doc. 21.) The Government alleges that TCI's

fraudulent conduct related to TCI's performance of a firm fixed-price government contract

W91GDW-07-D-4022 ("Task Order (TO) 11") in Al Asad, Iraq. (*Id.* ¶ 3.)

As discussed more fully below, Relator, Mr. Omar Badr, a former TCI employee, filed

this action under the FCA's "whistleblower" *qui tam* provisions. (*Id.* ¶¶ 2, 8.) Badr is Georgia

resident who was employed as a TCI medic from February 2008 to June 2010. (Relator's

Compl. ¶ 4, Doc. 1.) TCI is an Illinois corporation with a corporate office located in Reston,

Virginia. (Intervenor's Compl. ¶ 9.) TCI is in the business of providing "mission support,

security, and training services" to the United States government and private corporations.

(Def.'s Mem. Supp. Mot. to Dismiss Intervenor's Compl. at 1, Doc. 32.)

In support of the Department of Defense ("DoD"), TCI was awarded government

contracts to provide security services to various military installations overseas, including military

bases located in Iraq. (*Id.*) Relevant to the present litigation, TCI bid on and was awarded TO

11 to provide supplies and security services at Forward Operating Base Al Asad, Iraq and the Al

Asad Airbase located in Iraq. (Intervenor's Compl. ¶¶ 11-13.) In part, TO 11 provided that TCI

was "to provide all labor, weapons, equipment and other essential requirements to supplement

and augment security operations at Al Asad Airbase, Iraq." (*Id.* ¶ 14.) Under its terms, TO 11

specified twenty responsibilities, three of which concerned security personnel whom TCI was to

employ as security guards. (*Id.* ¶ 14.)

Given the nature of the assignment to protect the military base, TCI was required to

ensure compliance with TO 11's weapons qualification requirements. TO 11 was initiated to

acquire perimeter defense and entry control point operation at the Al Asad installation. (*Id.* ¶

21.) Thus, TO 11 required that TCI personnel maintain U.S. Army standard weapons

qualifications. Specifically, TO 11 required TCI to "ensure that all employees have received

4

initial training on the weapons they carry, that they have qualified on a U.S. Army qualification course, and that they have received, at a minimum, annual training/requalification on an annual basis, and that the employee's target is kept on file for a minimum of 1 yr." (*Id.* ¶¶ 14-15.)

Under the terms of the contract, oversight of TCI's performance was to be conducted by an appointed Contracting Officer's Representative ("COR"), and TCI's training records were to be made available for inspection by the COR at any time. (*Id.* ¶¶ 22, 28, 42, 47, 49.) The COR bore responsibility for ensuring that the goods and services provided by TCI conformed to the terms and conditions of TO 11. (*Id.* ¶ 22.) The form by which the COR documented his acceptance was the Material Inspection and Receiving Report, also known as a "DD-250." (*Id.* ¶ 62.) The form required that the COR sign and select a box for "ACCEPTANCE" of the services once they "conform to contract, except as noted herein or on supporting documents." (*Id.* ¶ 64.) Part 22 of the DD-250 further required the COR to sign the form if the services provided "were received in apparent good condition except as noted." (*Id.* ¶ 65.) All of the relevant DD-250s in this case were appropriately signed and checked by the Government's COR. (*See generally* Def.'s Mem. Supp. Mot. to Dismiss Intervenor's Compl. Ex. A, Doc. 32-1.) The DD-250s did not contain any certifications by Triple Canopy and were not endorsed by any Triple Canopy employee. (*See id.*)

The Government alleges that TCI failed to comply with the terms and conditions of TO 11 from the outset. Specifically, the Government alleges that on June 21, 2009, 332 Ugandan TCI guards arrived for duty at Al Asad. (Intervenor's Compl. ¶ 30.) Shortly after arriving, all the Ugandan guards allegedly failed to zero their rifles—a basic skill required before even attempting to qualify on a qualification course. (*Id.* ¶ 31.) Jesse Chavez, a TCI Site Manager, allegedly reported this to TCI Deputy Country Manager Mark Alexander and TCI Project

Manager Terry Lowe. (*Id.* ¶ 34.) As a result, the Government alleges that, as early as its first claim for payment, TCI knew the guards provided had a demonstrated inability to qualify on a U.S. Army qualification course and thus did not conform to the terms of TO 11. (*Id.* ¶¶ 32-35.) On August 10, 2009, TCI presented its first claim for payment to the Government for its performance of TO 11. (*Id.* ¶ 35.) The claim billed for the services of 303 guards during the period between July 27, 2009 and August 26, 2009, including the period during which the Ugandan guards were allegedly not weapons qualified. (*Id.*)

The Government alleges that TCI's noncompliance and fraudulent billing continued throughout its performance of TO 11. After failed attempts to qualify the Ugandan guards, TCI allegedly began to falsify scorecards that were then place in the guards' personnel files in the event of an inspection and to mislead the CORs when the CORs certified TCI's compliance. (*Id.* ¶ 42.) The Government alleges that accurate personnel files were material considerations to the Government for payment and that TCI continued to bill the Government for the guards' services despite the guards' noncompliance with TO 11's weapons qualification requirements. (*Id.* ¶¶ 43-44.)

On May 12, 2010, Mr. Badr, reported this allegedly fraudulent conduct to TCI's Human Resources Director, Vice President, and General Counsel. (*Id.* ¶ 51.) After returning to Al Asad about six days later, Badr was instructed by a TCI site manager to produce firing qualification scorecards reflecting passing scores for all TCI guards. (*Id.* ¶ 52.) At the time, TCI's contract year for TO 11 was coming to an end, and the Complaint alleges that TCI sought to continue the contract for another year. (*Id.*) Badr did as instructed and altered TCI's scorecards to reflect passing scores. (*Id.*) For the next two months, TCI continued billing the Government for the guards' services. (*Id.*)

6

For reasons not presented to the Court, TCI was not awarded the TO 11 contract renewal. (Relator Compl. ¶ 20.) However, TCI continued to perform other government contracts in Iraq. (*Id.*) The Ugandan unqualified guards stationed at Al Asad were allegedly transferred to other installations in Iraq to perform similar services under similar government contracts. (*Id.* ¶ 21.) Approximately thirty TCI guards were sent to perform a contract known as "Cobra," approximately twenty-five were transferred to a project known as "Kalsue," an unspecified number were sent to perform the "Delta Contract," and the remainder were sent Basra, Iraq to perform the "Basra Contract." (*Id.*) Relator alleges that TCI continued to employ and bill the Government for these guards knowing that guards were not qualified under the terms of these various contracts, which Mr. Badr claims were similar to those of the TO 11 contract governing TCI's work at Al Asad. (*Id.*)

Relator Omar Badr filed this action pursuant to the *qui tam* provisions of the FCA on March 21, 2011. (*See* Doc. 1.) Relator's Complaint alleges five violations of 31 U.S.C. § 3729(a), seeking relief for false claims submitted in connection with Defendant's activities at five military installations pursuant to five separate contracts: Government Contract W91GDW-07-D-4022, otherwise referred to as TO 11, which governed activities at Al Asad (Count I); the "Cobra Contract" (Count II); the "Kalsue Contract" (Count III); the "Basra Contract" (Count IV); and the "Delta Contract" (Count V). (Relator's Compl. ¶¶ 23, 30, 37, 44, 51.)

On June 25, 2012, the United States elected to intervene as to Count I of Relator's Complaint. (*See* Doc. 18.) The Government filed its Complaint in Intervention on October 25, 2012. (Doc. 21.) The Government's Complaint in Intervention presents seven causes of action: false claims in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I); false statements in violation of

7

§ 3729(a)(1)(B) (Count II); breach of contract (Count III); actual fraud (Count IV); constructive fraud (Count V); payment by mistake (Count VI); and unjust enrichment (Count VII).

TCI filed its Motions to Dismiss on December 24, 2012, arguing that (1) Relator failed to state a claim on all five of his counts, and (2) the Government failed to state a claim on Counts I, II, IV, V, and VII. (Docs. 29, 31.) The Court heard oral argument on the matter on January 11, 2013. The Motions are now ripe for disposition.

## II. STANDARD OF REVIEW

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court attaches no such assumption to those "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citations omitted). Thus, the Court's review involves the separation of factual allegations from legal conclusions. *Burnette v. Fahey*, 698 F.3d 171, 180 (4th Cir. 2012).

The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol*, 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

8

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). The complaint must present "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *See Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678-79 and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)).

In cases involving fraud, plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). With respect to False Claims Act cases, this requires pleading "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citing *Harrison v. Westinghouse Savannah R. Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ["*Harrison I*"]) (internal quotations omitted). This typically entails "the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Willard v. Humana Health Plan of Tx. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 257 (4th Cir. 2012) (citing *Harrison I*, 176 F.3d at 783 n.5).

## III. DISCUSSION

The Court grants TCI's Motions to Dismiss for failure to state a claim. The Court holds that the false claims violations, alleged in Count I of the Government's Complaint and all five

counts of Relator's Complaint, fail to state a claim because they do not sufficiently allege the presentment of a false statement or certification in support of a demand for payment or claim by Defendant.[1] The Court holds that the false records claim, Count II of the Government's Complaint, must be dismissed for failure to plead presentment of and reliance on a false claim. The Court holds that the Government's fraud claims, Counts IV and V, must be dismissed for failure to plead reliance upon any false statements. The Court holds that the Government's unjust enrichment claim, Count VII, must be dismissed because quasi-contractual remedies are not available where an express contract controls a dispute. The Court discusses each of these rulings in turn.

### a. False Claims in Violation of 31 U.S.C. § 3729(a)(1)(A)

The Court holds that both the Government's and the Relator's claims alleging a violation of § 3729(a)(1)(A) fail because the respective complaints do not allege Defendant's presentment of a false claim to the Government for payment.

#### i. The Government's § 3729(a)(1)(A) Claim Fails

The False Claims Act ("FCA") imposes liability on "any person who knowingly presents, or causes to be presented, a false or fraudulent *claim* for payment or approval . . . ." 31 U.S.C. § 3729(a)(1)(A) (emphasis added). The FCA defines "claim" broadly to include "any request or

---

[1]    Count I of Relator's Complaint is superseded by the Government's Complaint and therefore dismissed for lack of standing. While an individual suing on behalf of the Government is the assignee of an FCA action, intervention by the Government on a claim that is identical to the individual's claim precludes the individual from maintaining the same. As the FCA indicates, such intervention means that the "action shall be conducted by the Government." 31 U.S.C. § 3730(b)(4). Because Relator's Count I is virtually indistinguishable from the Government's Count I, the Court finds that Relator is superseded on that claim. *See U.S. ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 648-49 (S.D.N.Y. 2011) (finding the relator's complaint "superseded in its entirety by the Government's Amended Complaint" and thus dismissed where the relator's complaint was "predicated on nearly identical factual allegations of wrongdoing" as the government's complaint and the relator "completely fail[ed] to specify any material difference between his Amended Complaint and that of the Government's").

demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the United States . . . ." 31 U.S.C § 3729(c). "[T]o trigger liability under the Act, a claim actually must have been submitted to the federal government for reimbursement, resulting in 'a call upon the government fisc.'" *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013) (quoting *Harrison I*, 176 F.3d at 785). Accordingly, the presentment of a false claim is "the central question" in creating FCA liability. *Harrison I*, 176 F.3d at 785; *cf. U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a claim is not . . . a 'ministerial act,' but the *sine qua non* of a False Claims Act violation."). The Fourth Circuit has emphasized the importance of Rule 9(b)'s particularity requirement in FCA claims. *See, e.g., Wilson*, 525 F.3d at 376. Accordingly, an indication of the "the 'who, what, when, where, and how' of the alleged fraud" is critical to the Court's finding. *Id.* (quoting *Willard*, 336 F.3d at 384).

As a threshold matter, the Court holds that, on their face, the TCI invoices did not contain factually false statements. The False Claim Act "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *Harrison I*, 176 F.3d at 785 (internal quotation marks omitted). A claim for payment is false when it "involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)). The claim for payment must represent an objective falsehood to be actionable. *Wilson*, 525 F.3d at 376-77. TO 11 was a firm fixed price government contract. (Intervenor's Compl. ¶ 59.) The supplies and services for which TCI billed were identified in each invoice by contract line item numbers. (*Id.*) The invoices identified the quantity of guards provided, the

unit price for each guard, the period of service that each guard performed, and the amount for the

guards' services. (*Id.*) Notably, the Government does not allege that TCI billed for anything

other than what TCI delivered. That is, the Government does not contend that TCI invoiced a

fraudulent number of guards or billed for a fraudulent sum of money. *Cf. U.S. ex rel. Owens v.*

*First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 730 (4th Cir. 2010) (holding that

an invoice was not a false where the defendant billed for goods and the invoice matched the

quantity of goods supplied, despite the questionable quality of those goods). Thus, TCI's

invoices do not contain objectively false statements sufficient to render them false claims for

purposes of FCA liability.

      The Court finds that the submission of the DD-250 forms in this case does not constitute

submission of false claims by TCI. The Government argues that the "claims" in this case are not

only the twelve TCI invoices but also the DD-250s submitted along with TCI's invoices. (Mot.

to Dismiss Hr'g. Tr. 20:11-13, Jan. 18, 2013, Doc. 46.) Under the FCA, the term "claim" means

"any request or demand, whether under contract or otherwise, for money or property . . . (i) that

is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A).

In its Complaint, the Government alleges that the DD-250s for all of TCI's invoices were

presented for payment along with the invoices themselves. (Intervenor's Compl. ¶ 66.)

However, a DD-250 form has been recognized as a claim for FCA purposes only where it is

submitted as the invoice itself. *U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 91 F.3d 321, 331

(9th Cir. 1995). Otherwise, a DD-250 form in and of itself cannot be the basis of a false claim.

*See U.S. ex rel. Stebner v. Stewart & Stephenson Servs., Inc.*, 144 F. App'x 389, 394 (5th Cir.

2005) (citation omitted) (holding that FCA liability could not attach by way of a DD-250 form

because the form did not "expressly certify[y] compliance with every provision of the overall

12

contract" and the Fifth Circuit does not recognize the implied theory of certification); *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:08-CV-1162, 2009 WL 2240331, at *13 (E.D. Va. July 23, 2009) (explaining that a DD-250 could not serve as the basis of a false claim act violation because (1) the contractor was under no "legal obligation [] to disclose unperformed tests" on the form and (2) the contractual obligation to submit the form does not equal an obligation to make such a disclosure). Thus, reliance on the form is unlikely to provide a sufficient basis for meeting the requirement that TCI submitted a false claim. Even assuming, *arguendo*, that the DD-250 forms here could constitute false claims under the FCA, the forms did not contain factually false statements made by TCI. The DD-250s were completed by CORs who, by completing the form, certified that they had inspected for TCI's compliance and indicated that TCI's performance conformed to TO 11's terms. Thus, any statement contained in the DD-250s, whether true or false, was not made by TCI. *See Butler*, 91 F.3d at 331 (holding that a DD-250 form did not constitute a claim by the defendant, as defined by the FCA, "because the government, not [defendant], certified on the form that the goods confirmed to contract"). Therefore, the DD-250 cannot in and of itself rescue the false claim allegation.

The Government additionally argues that it has sufficiently alleged a false or fraudulent claim because the TO 11 invoices submitted by TCI billed for "guard" services, an act of implicitly billing for guards that were qualified pursuant to the terms of the contract. Because the terms of the contract required the guards to attain a certain weapons qualification, the Government argues, the contract defined the term "guard," such that TCI's failure to verify that the guards actually met the contractual requirements constitutes an "incorrect description of services provided," and was therefore a fraudulent claim submitted for payment. Essentially, the

13

Government seeks to read into the TO 11 invoices contractual terms related to the guards' weapon qualification requirements.

The Government's argument fails, however, for four reasons. First, the terms of the contract do not reference, let alone define, the term "guard." TO 11 generally states that all employees are required to receive weapons training and qualify on a United States Army qualification course. It follows that the Government's interpretation of "guards" to be employees who possess a certain weapons qualification is an attenuated construction of the contractual terms. This extenuates the Government's argument that TCI's billing of "guards" in its submission of the TO 11 invoices is objectively false because the terms of the contract do not define, nor reference, the term "guard." In other words, the Government cannot assert that TCI falsely claimed services for "guards," as that term is defined by contract, when the contract does not expressly define that term. *Cf. United States v. Fadul*, No. 11-0385, 2013 WL 781614, at *7 (D. Md. Feb. 28, 2013) (citing *Wilson*, 525 F.3d at 377) (observing that "imprecise statements or differences in interpretation growing out of a disputed legal question are . . . not false under the [False Claims Act]").

Second, it cannot be said, based on these allegations, that because the guards were not qualified under the terms of the contract, their services were "incorrectly described" in a manner that rendered a request for payment for their services factually or objectively false. The Government analogizes their factual falsity argument with cases involving defective products in the FCA context. Specifically, the Government cites *United States v. Bornstein*, 423 U.S. 303 (1976), and *U.S. ex rel. Roby v. Boeing Co.*, 302 F.3d 637 (6th Cir. 2002), for its position that, because the guards were not properly weapons qualified, charging for their services equates to charging the Government for products held to be defective because the products were incorrectly

14

described. However, *Bornstein* involved falsely marked tubes used in radio kits, and *Roby* involved defective transmission parts provided to the Army. *See Bornstein*, 423 U.S. at 307-08; *Roby*, 302 F.3d at 639-40. The defective *goods* in these cases are materially different than a claim for defective *services* as alleged in this case. There may be some inherent value retained in a service that is provided by an unqualified employee compared to a complete inability to use a product that is rendered defective. *Cf. U.S. ex rel. Sanchez-Smith v. AHS Tulsa Reg. Med. Ctr., LLC*, 754 F. Supp. 2d 1270, 1287 (N.D. Okla. 2010) (rejecting a worthless services theory based upon substandard medical care because some care was provided, even if ultimately below expectations). Thus, the Court declines to adopt this factual falsity argument.

Third, the Government's "worthless services" theory of FCA liability fails because the Government does not sufficiently allege that the TCI guards were entirely deficient so as to render their services worthless. "[I]in a worthless service claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all." *U.S. ex rel. Davis v. U.S. Training Ctr., Inc.*, 498 F. App'x 308, 315 n.11 (4th Cir. 2012) (citing *Straus*, 274 F.3d at 703). The Ugandan guards provided a service, although perhaps not to the satisfaction of the Government or in full compliance with terms of the contract. The Government fails to sufficiently allege that the guards' services were entirely devoid of value or that the noncompliance with the weapons qualification requirement caused any injury to the Government such that the guards effectively provided no service at all. *Cf. In re Genesis Health Care Ventures, Inc.*, 112 F. App'x 140, 143 (3d Cir. 2001) ("Case law in the area of 'worthless services' under the FCA addresses instances in which either services are literally not provided or the service is so substandard as to be tantamount to no service at all."). Nothing in the Complaint demonstrates that the services were known to lack any value or that no service was

15

rendered. The Government admits that its Complaint does not allege that a guard never showed up to work or failed to perform their duties in a manner that would equate to no performance at all. (*See* Hr'g Tr. 23:21-24:7.) Thus, the Government essentially argues that the falsity arises from a lack of qualifications while failing to indicate that the guards provided "utterly failed" to perform various services in their capacities as guards. *Cf. U.S. ex rel. Davis v. Prince*, No. 1:08-CV-1244, 2011 WL 2749188, at *7 (E.D. Va. July 13, 2011) (explaining that a worthless services theory under the FCA requires evidence of an "utter fail[ure] to perform . . . contractual duties"), *aff'd sub nom. U.S. ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308 (4th Cir. 2012). Such an argument remains unpersuasive without an indication of utter failure to perform.

The Government's reliance on *United States v. Southern Maryland Home Health Services*, 95 F. Supp. 2d 465 (D. Md. 2000), is similarly misplaced because that decision did not address whether the services were worthless in that case. The Government here recognizes as much insofar as it stated in its brief that "the case principally addressed the issue of vicariously liability." (Intervenor's Opp'n at 11, Doc. 36.) In that case, the theory pursued by the Government was a worthless service theory on grounds that the defendant employed an individual to perform physical therapy yet that individual was not licensed to do so, a requirement for Medicare reimbursement.[2] *Southern Maryland*, 95 F. Supp. 2d at 466-67. However, the issue before the court was whether the employer could be held vicariously liable for the employee's actions, a question that did not require an inquiry into whether a worthless

---

[2]    To the extent that the Government argues that the allegedly unqualified guards required a license to perform their services in Iraq, nothing in the Complaint demonstrates that such licensure was a precondition to payment in the same way the District of Maryland explained that non-licensure could invoke FCA liability. Thus, notwithstanding the fact that its argument fails to demonstrate that TCI's employees were unlicensed, the Government's "clarification" of its statements during oral argument cannot transform *Southern Maryland* into an analogous scenario. (*See* Doc. 53.)

services theory could be pursued. *Id.* Therefore, the Government's reliance on *Southern Maryland* in support of its worthless services argument is misplaced, as that case offered no analysis or insight as to whether services rendered by an unlicensed individual are worthless solely for the reason that the individual lacks a license, even where there is no indication of an utter failure to adequately and sufficiently perform the various duties required.

Moreover, the contract required that employees receive weapons training and qualify on a U.S. Army qualification course. The Complaint alleges that TCI did provide the weapons training required by contract. The weapons qualification requirement suggests that the employees were required to qualify after training, and the Government's Complaint is that the guards did not qualify on a U.S. Army qualification course, despite their weapons training, and TCI continued to employ the unqualified guards. Such a claim may support a breach of contract action. Here, the Government does not allege that the TCI ever presented the alleged false weapons qualifications targets in the individual guards' files to the contract representative or the Government in support of a demand for payment.

Fourth, the Court declines recognition of an implied certification theory of liability and, in any event, the Government fails to demonstrate that TCI's actions implied certification with a precondition for payment. False certification in the FCA context arises where (1) "a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program;" (2) "the defendant failed to comply with those conditions;" and (3) "the defendant falsely certified that it had complied with the conditions in order to induce the government benefit." *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 411-12 (4th Cir. 2010) (quoting *Harrison I*, 176 F.3d at 786). The Fourth Circuit explained in *Harrison I* that certification is implied, rather than express, where a plaintiff contends "that the

submission of invoices and reimbursement forms constituted implied certifications of

compliance with the terms of the particular government program." 176 F.3d at 786 n.8 (citations

omitted).  The court reasoned that, because "there can be no False Claims Act liability for an

omission without an obligation to disclose," an implied certification claim is "questionable" in

the Fourth Circuit.  *Id.*  No Fourth Circuit decision has adopted the viability of an implied

certification theory, and district courts have followed *Harrison I*'s doubts by rejecting claims

predicated on the implied certification theory.  *See United States v. Jurik*, No. 5:12-CV-460,

2013 WL 1881318, at *6 (E.D.N.C. May 3, 2013) (dismissing FCA claims where the

government "concedes no affirmative certification of compliance exists in this case" and it "fails

to argue adequately that []an implied [certification] theory should be adopted in the Fourth

Circuit"); *U.S. ex rel. Rostholder v. Omnicare, Inc.*, No. CCB-07-1283, 2012 WL 3399789, at

*14 (D. Md. Aug. 14, 2012) (noting that the Fourth Circuit has not adopted implied certification

liability); *Carter*, 2009 WL 2240331, at *13 (dismissing an FCA claim presented through an

implied certification theory because "[n]othing in Relator's argument convinces this Court that

the Fourth Circuit would choose to recognize an implied false certification claim, in spite of its

statement implying the contrary in *Harrison I*").

　　　　Even if courts in this circuit recognized implied certification, the viability of a claim

premised on certification by silence requires a showing that "certification was a prerequisite to"

payment.  *U.S. ex rel. Herrera v. Danka Office Imaging Co.*, 91 F. App'x 862, 864 (4th Cir.

2004) (citations omitted).  Thus, the absence of a precondition for payment connected to the

weapons qualification certification forms undermines any implied certification liability here.  *See*

*id.* at 865 (explaining that implied certification liability would not apply where the controlling

agreement "does not condition payment of [the defendant's] invoices on a certification" of

18

compliance with certain provisions); *Harrison I*, 176 F.3d at 793 (citations omitted) ("To the extent that Harrison is asserting an implied certification by silence . . . Harrison's claim fails on the pleadings because he has never asserted that such implied certifications were in any way related to, let alone prerequisites for, receiving continued funding."); *cf. Prince*, 2011 WL 2749188, at *7 (finding the relators' false certification claim insufficient where they failed to allege that compliance with certain contractual provisions "was a prerequisite for payment"). Accordingly, the Court both declines to adopt the implied certification theory and finds that the Government's allegations would in any event be insufficient to invoke this theory of liability.

Therefore, based on the allegations in the Government's Complaint, the Court holds that the TO 11 invoices submitted for payment were not false claims containing factually or objectively false statements. Accordingly, the Court dismisses Count I of the Government's Complaint.

### ii. Relator's FCA Claims Fail

Counts II through IV of Relator's Complaint are dismissed because he fails to sufficiently allege presentment of a claim to the Government for payment. In *Takeda*, the Fourth Circuit held that failure to plead presentment of a specific claim submitted for payment is fatal to a relator's FCA action. 707 F.3d at 457-58. The court recognized that "liability under the [FCA] attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme . . . . Therefore, when a relator fails to plead plausible allegations of presentment, the relator has not alleged all the elements of a claim under the [FCA]." *Id.* at 456 (citing *Harrison I*, 176 F.3d at 785 and *Clausen*, 290 F.3d at 1313). Thus, Relator cannot use his allegations of a fraudulent scheme at one location involving one contract to create an inference that the scheme must have resulted in the submission of false claims at other locations governed

by other contracts of which he lacked personal knowledge. *Id.* To assume the submission of a claim based on an individual's assumptions without any allegation of such submission would "strip[] all meaning from Rule 9(b)'s requirement of specificity." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp. 2d 1336, 1343-44 (M.D. Fla. 2012) (quoting *Clausen*, 290 F.3d at 1312 n.21); *U.S. ex rel. Conrad v. GRIFOLS Biologicals, Inc.*, No. 07-3176, 2010 WL 2733321, at *5 (D. Md. July 9, 2010) (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)).

Here, Relator fails to allege with any degree of specificity those claims for payment allegedly submitted by TCI to the United States with respect to the "Cobra Contract," "Kalsue Contract," "Basra Contract," or "Delta Contract." While the Fourth Circuit has recognized that "[t]he fact that [a relator] never actually saw the contracts is not dispositive," there must be at least some circumstantial evidence to "raise a distinct possibility of a viable FCA action even where an employee does not have access or has not actually viewed the contractual documents." *Glynn v. EDO Corp.*, 710 F.3d 209, 217 (4th Cir. 2013). In *Glynn*, the court found that the relator's "nineteen years of working for defense contractors and substantial time running his own business provided the context for his objectively reasonable belief that" false claims were submitted in violation of the contracts. *Id.* Conversely, Relator here lacks personal knowledge of the requirements of those contracts and thus did not plead any provisions of those contracts supporting a plausible inference that TCI failed to comply with those contracts. Relator also lacks the sort of circumstantial evidence, such as personal experience with defense contractor provisions as demonstrated in *Glynn*, to support his belief. The allegations in his Complaint demonstrate that Relator worked as a defense contractor for the two years TCI employed him and, prior to his work with TCI, he served in the United States Army. Neither this experience

nor any other allegation in his Complaint raise sufficient circumstantial evidence to support his claims regarding non-Al Asad contracts and TCI's compliance or lack thereof. He does nothing more than simply presume, based upon what he was told after leaving Iraq, that TCI failed to perform its duties as required by those non-Al Asad contracts and billed for unperformed services.

Furthermore, nothing in Relator's Complaint establishes or creates a plausible inference that Relator was at the sites governed by these contracts and would thus have had personal knowledge of the alleged breaches at these sites. This Court previously addressed a similar situation involving claims by a government contractor employee in Iraq alleging breaches at military camps aside from the one where the employee worked. *Carter*, 2009 WL 2240331, at *3-4. In *Carter*, the relator worked at a military installation in Iraq and brought allegations that the defendant contractor fraudulently billed for water purification services at various military installations. *Id.* at *1-4. In addition to allegations concerning the installation where the he was employed, the relator alleged that, subsequent to his departure from the company, the defendant failed to fulfill contractual requirements at other military installations and billed for those unperformed tasks. *Id.* at *4. This Court held that the allegations regarding those other sites were insufficient to fulfill Rule 9(b)'s requirements. *Id.* at *9. In much the same manner, "it is clear" that Relator's Counts II through V here, presenting allegations about installations aside from the Al Asad base where he worked, are nothing more than "mere[] extrapolati[on] from his personal knowledge about [one] specific site[] in Iraq to obtain discovery regarding all of Defendant's other sites in Iraq." *Id.* As noted, these assumptions, which would strip Rule 9(b) of its force, will not be permitted to permit "precisely the kind of fishing expedition that the Fourth Circuit sought to prevent in *Harrison I*." *Id.* Without any additional pre-discovery

21

information to support his allegations regarding the non-Al Asad installations, Relator's claim fails. Therefore, Relator's Complaint is dismissed as to Counts II through IV for failure to plead presentment of a claim and failure to plead these causes of action with specificity.[3]

### b. False Records Claim Under § 3729(a)(1)(B)

The Court grants TCI's Motion to Dismiss Count II of the Government's Complaint for two reasons. First, as explained above, the Government fails to demonstrate the submission of an objectively false claim by Defendant. Second, the Government fails to allege with necessary specificity enough facts to demonstrate reliance on TCI's records such that causation is sufficiently alleged.

A "false records" claim under the FCA provides for liability where a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). An FCA claim, whether for false statements under § 3729(a)(1)(A) or false records under § 3729(a)(1)(B), requires "(1) that [defendant] made a false statement or engaged in a fraudulent course of conduct; (2) that such statement or conduct was made or carried out with the requisite scienter; (3) that the statement or conduct was material; and (4) that the statement or conduct caused the government to pay out money or to forfeit money due." *Owens*, 612 F.3d at 728-29 (citing *U.S. ex rel. Harrison v. Westinghouse Savannah R. Co.*, 352 F.3d 908, 913 (4th Cir. 2003) ["*Harrison II*"]).

#### i. Effect of 2009 FCA Amendments

As an initial matter, the Court rejects the Government's argument that the 2009 FERA amendment renders the *Harrison* test obsolete as to false records claims. Congress amended the FCA in 2009, adjusting the language of the provisions defining a cause of action under the FCA.

---

[3]     By operation of intervention, as explained in note 1, this dismisses the entirety of Relator's Complaint.

22

*See* Fraud Enforcement Recovery Act, Pub. L. No. 111-21 § 4(f), 123 Stat. 1617, 1625 (2009)

("FERA"). The Government infers that the FCA's current language controls false records

claims, not the pre-FERA test applied in the *Harrison* cases, and thus renders unnecessary an

allegation that a false record caused payment.[4] (Intervenor's Opp'n at 18-19 & n.11.)  However,

the Fourth Circuit continues to apply the *Harrison* test to claims where the FERA language

governs. *Owens*, 612 F.3d at 728-29 & n.* (applying the FERA amendments and requiring the

relator to demonstrate the four elements defined in *Harrison II*); *accord U.S. ex rel. Steury v.

Cardinal Health, Inc.*, 625 F.3d 262, 267 & n.1 (5th Cir. 2010) (relying on the four pre-FERA

elements—identical to those used in the Fourth Circuit—when assessing post-FERA claims).

Accordingly, the Court finds no reason to either question the validity of the *Harrison* test or

otherwise depart from post-FERA precedent reaffirming application of those elements set forth

in *Harrison I* and *Harrison II*.

### ii.   Lack of a False Claim, Materiality, and Causation

With the *Harrison* test still applicable to post-FERA claims, the Court finds that the

Government's false records claim fails due to the lack of a false claim that would establish the

causal element under *Harrison I*.  The post-FERA version of the FCA still requires false records

to be material to a false claim.  The change in the statutory language removed the requirement

that the claim actually be paid; this does not affect whether the false record is related to a false

claim. *Cf. Hopper v. Solvay Pharm.*, 588 F.3d 1318, 1329 (11th Cir. 2009) (holding that pre-

FERA false records claims require proof "that the government in fact paid a false claim").

Therefore, the Government here must demonstrate that the allegedly false weapons certifications

were connected to a false claim. *See U.S. ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, No. 3:09-

---

[4]     As explained below, the Government's argument regarding the causation of payment has
no bearing on the Court's application of the Fourth Circuit's rubric for FCA claims.

23

CV-484, 2013 WL 146048, at *17 (M.D. Tenn. Jan. 14, 2013) (dismissing relator's post-FERA

false records claim where relator "fails to adequately identify any[] false or fraudulent claim,"

explaining that, "[o]n that basis alone, the relator's [3729(a)(1)(B) false records] claim for relief

is subject to dismissal"). The Government acknowledges that its claim rests on the theory that

the fabricated scorecards were false records material to a false claim. (Intervenor's Opp'n at 19.)

However, the lack of a false claim directly undercuts their theory. This omission of the *sine qua*

*non* of FCA liability is sufficient to defeat the Government's false records claim.

Furthermore, the Court finds lacking causation between the allegedly falsified marksman

records and any claims for payment factors into the question of materiality. Materiality depends

upon "whether the false statement has a natural tendency to influence agency action or is capable

of influencing agency action." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d

787, 799-800 (E.D. Va. 2007) (quoting *Harrison II*, 352 F.3d at 914 n.4). Both the third element

in the *Harrison* cases and the post-FERA statutory language rely on whether a statement is

material to a false claim. Here, the Court finds glaring the omission of any allegation that

anyone in the Government actually viewed these false records, the date of any such viewing, and

whether those who viewed the records actually relied on the records in submitting DD-250

forms. Such facts, pleaded with specificity as required by Rule 9(b), could demonstrate reliance

upon the false statement and thus establish materiality and causation. The Government argues

that government officials "routinely viewed" the weapons certification forms. (*See* Intervenor's

Opp'n at 20, 22.) Despite its contentions, no specific allegations of such viewing appear in the

Complaint; the Government submits only general allegations that documents were reviewed.

(*See* Hr'g Tr. 27:4-16.) At best, the Government's Complaint explains that the weapons

certification forms were to be placed in personnel files and made available for review at any

24

time. However, the Complaint remains devoid of any allegations that the weapons certification forms were actually reviewed prior to the submission of any claims for payment. As such, the weapons certification forms cannot be material if they in the absence of allegations that they were actually reviewed and relied upon in the Government's decisions to certify TCI's compliance with the TO 11 and pay funds to TCI.

Therefore, the Court grants Defendant's Motion as to Count II of the Government's Complaint seeking relief under a false records claim. The Government fails to plead with particularity the existence of a false claim and its reliance upon any false records in submission of a false claim.

### c.  Common Law Fraud

The Court grants Defendant's Motion to Dismiss Count IV, common law fraud, and Count V, Virginia constructive fraud, because the Government fails to demonstrate reliance upon any allegedly false statements.

The government may seek relief under common law actions as a supplement to statutory remedies, so long as the statutes do not expressly abrogate common law remedies. *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 667-68 (4th Cir. 1996). Accordingly, common law fraud remains available to the government because the FCA does not abrogate such a remedy. *United States v. Borin*, 209 F.2d 145, 148 (5th Cir. 1954).

Under federal common law, fraud requires four elements: "(1) misrepresentation of a material fact; (2) intent to deceive; (3) justifiable reliance on the misrepresentation by the deceived party; and (4) injury to the party deceived." *Veridyne Corp. v. United States*, 105 Fed. Cl. 769, 795 (Fed. Cl. 2012). Virginia law requires essentially the same elements, including reliance on the misrepresentation. *See Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*,

25

507 S.E.2d 344, 346 (Va. 1998) (citations omitted) (defining the elements of actual fraud as "(1)

a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with

intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party

misled"). Virginia law also recognizes constructive fraud where clear and convincing evidence

demonstrates "that a false representation of a material fact was made innocently or negligently,

and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Id.* at

347. The operative element in each cause of action is the deceived party's reliance on the

misrepresentation. Because this element is critical to both federal and Virginia common law

fraud claims, the Court finds unnecessary a resolution of which version of actual common law

fraud applies here.

   The Court holds that Count IV, common law fraud, and Count V, constructive fraud, fail

to demonstrate the Government's reliance upon the allegedly falsified weapons qualification

scorecards. As explained above, the Complaint's allegations describe how the scorecards were

required to be in personnel files and available for review. However, no allegations specifically

allege with particularity who reviewed the files, when such files were reviewed, and how the

review of files on a specific date influenced the submission of any particular claim. Thus, the

Complaint fails to demonstrate specific, actual reliance upon the allegedly fabricated documents.

### d. Unjust Enrichment

   The Court grants TCI's Motion to Dismiss Count VII, unjust enrichment, because an

express contract controls the dispute.

   "Where a contract governs the relationship of the parties, the equitable remedy of

restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortg., Inc. v.

S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000). While the Government accurately states that a

quasi-contract remedy may be pleaded in the alternative, despite the existence of a contract, a fundamental requirement is that the quasi-contractual remedy be pleaded sufficiently to withstand a motion to dismiss. *See U.S. ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 856 (E.D. Va. 2010) (denying a motion to dismiss fraud allegations, pleaded alongside breach of contract claims, because the complaint sufficiently "states a plausible claim to relief on . . . common law counts"). Accordingly, whether the unjust enrichment claims here may survive will depend on whether the quasi-contract claims are sufficiently pleaded.

Here, as noted above, the Government's fraud claims fail due to a lack of specific allegations as to any reliance upon the allegedly false submissions. Furthermore, the validity of the initial contract is not in dispute, and the Complaint fails to allege that the renewal could not have occurred had the Government known of the falsifications. Thus, the Complaint fails to provide a basis for finding that any of the parties' disputes are not governed by an express contract. As a result, the unjust enrichment claim fails. *See, e.g.*, *Tabler v. Litton Loan Servicing, LP*, No. 3:09-CV-146, 2009 WL 2476532, at *4 (E.D. Va. Aug. 12, 2009) (citing *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988)) (dismissing an unjust enrichment claim because an express contract governed the dispute).

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motions to Dismiss. Relator's Complaint fails to sufficiently allege presentment of a false claim or present allegations of false or fraudulent conduct based on personal knowledge regarding Counts II through V. The Government's false claims allegations, Counts I and II, fail to sufficiently allege with specificity the presentment of a false claim or that any false records were material to claims for payment. The Government's fraud claims, Counts IV and V, fail to allege reliance necessary to

27

demonstrate common law fraud.  The Government's unjust enrichment claim, Count VII, fails because an express contract controls the dispute.  Therefore,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Relator's Complaint (Doc. 29) is **GRANTED.**  Relator's Complaint is **DISMISSED without prejudice;**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts I, II, IV, and V of Intervenor's Complaint (Doc. 31) is **GRANTED.**  Counts I, II, IV, V, and VII of Intervenor's Complaint are **DISMISSED without prejudice.**

**IT IS SO ORDERED.**

ENTERED this ___19th___ day of June, 2013.


Alexandria, Virginia
6/ 19/ 2013

_____/s/_____
Gerald Bruce Lee
United States District Judge